**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------X

JOSEPH COLLINS,

                               Plaintiff,          **MEMORANDUM & ORDER**

        v.                                     19-CV-1691 (ST)

WALMART STORES EAST, LP,

                             Defendant.
------------------------------------------------------------X
**TISCIONE, United States Magistrate Judge:**


## INTRODUCTION

This case was brought by Plaintiff, Joseph Collins, who slipped and fell on a clothes hanger on the floor of a Walmart store located in Uniondale, New York.  Mr. Collins alleges that the accident caused him injury and was the result of negligence by the Defendant, Walmart Stores East, LP ("Walmart").  He seeks damages for injuries he alleges were caused by his fall. Defendant has moved for summary judgment on Plaintiff's claims.  For the reasons enumerated below, I GRANT the Defendant's motion for summary judgment.


## BACKGROUND

On July 22, 2017, Plaintiff drove his son and his friend to the Walmart located at 1123 Uniondale Ave in Uniondale, NY. *See* Pl. Compl., ECF No. 1-1; Def. R. 56.1 Br., ¶ 3, ECF No. 38-1.  Plaintiff parked in the fire lane and waited in the car with his son while his friend went inside the store to return a bicycle. Collins Dep., 12-13, ECF No. 38-6.  After approximately ten minutes, Plaintiff, concerned about his friend's whereabouts, left his vehicle to go inside and look for him. *Id.* at 13; Def. R. 56.1 Br. ¶ 5.  Plaintiff spent approximately three minutes inside the store looking for his friend. Def. R. 56.1 Br. ¶ 7.  During those three minutes, Plaintiff

1

walked to the bicycle section in the back and, upon not finding his friend, began walking to the front of the store. Pl. R. 56.1 Br. ¶ 4, ECF No. 39.

Plaintiff walked down the main aisle in the middle of the store (known as the "action alley"), and then turned into the women's clothing department to "cut[] through the aisle." Def. R. 56.1 Br. ¶ 10; Collins Dep., 20-21.  It was in this department where the incident at issue in this case occurred.

Plaintiff testified that, approximately four feet into the women's clothing department, he "slipped on a hanger in the middle of the aisle." Def. R. 56.1 Br. ¶ 11.  Plaintiff did not see the hanger before slipping on it; only after falling to the ground did he identify that he had slipped on the hanger. Collins Dep., 21-23.  No individual, to Plaintiff's knowledge, saw him fall, and no individual has submitted a statement saying they witnessed the fall. Collins Dep., 30. Surveillance video of the surrounding area suggested that the accident occurred at approximately 10:45 A.M. Pl. R. 56.1 Br. ¶ 36.

A picture is attached to Mr. Collins' affidavit which shows a similar hanger on the ground in the women's clothing department where the incident occurred. *See* Massaro Dec., Exh. A, ECF No. 39-3 ("Collins Aff."); Collins Dep. 26.  Though the hanger depicted is the same color and model as the hanger involved in the accident, Plaintiff does not believe it is the same hanger, and Plaintiff testified that the location of the hanger in the photo, while in the same area as his fall, is not the same position as where the hanger was at the time of Plaintiff's accident. Collins Dep. 26; Collins Aff. ¶ 8.  The photo depicts a light-colored hanger on a brown naturally patterned wood floor.

The force of Plaintiff slipping on the hanger caused it to move to a location by a clothing rack. Pl. R. 56.1 Br. ¶ 12.  When Plaintiff exited the women's clothing department he did so through a different route than he entered. *Id.* at ¶ 13.

After exiting the department, Plaintiff told a cashier about the incident and then spoke with a manager. *Id.* at ¶ 14.  He then filled out an incident report.  That incident report says, "[I] was walking through [the] Isle [*sic*] and sli[p]ped and fell on a hanger on the floor[,] got up from the floor and told a worker what took place." Massaro Dec., Exh. I, ECF No. 39-11 ("Incident Rep.").  Plaintiff indicated the incident happened "between lady department." *Id.*  When Plaintiff alerted the cashier to the incident, he also advised her to pick up the hanger off the floor, which she did before taking any pictures. Pl. R. 56.1 Br. ¶¶ 30, 32, 34.  Walmart did not preserve the hanger Plaintiff slipped on. *Id.* at ¶ 49.

Plaintiff claims as a result of his fall, he suffered "severe and permanent injuries." Pl. Compl. ¶ 18.

Defendant turned over four surveillance videos to Plaintiff, which are enumerated based on their position on the physical DVD enclosed in Plaintiff's submission.  Video 3 is from a camera which captured a portion of the Walmart's "action alley," a thoroughfare through which customers can walk throughout the whole store and enter departments. Def. R. 56.1 Repl. Br., ¶¶ 54-55, ECF No. 40; Luna Dep., 18, ECF No. 38-8.  Defendant disclosed video from 10:42:35 A.M. to 10:48:25 A.M. from that camera. Massaro Dec., Exh. D, ECF No. 39-6 ("Surv. Video Disk").  Plaintiff is shown in the "action alley" and making a right hand turn into a department at 10:45:44 A.M.. *Id.;* Pl. R. 56.1 Br. ¶ 54.  That turn would have put him in the portion of the store containing the women's clothing department. Def. R. 56.1 Repl. Br. ¶ 56.

The Asset Protection Manager assigned to this case by Defendant, Magali Rodriguez Luna, says there was a video showing Plaintiff exiting the woman's clothing department at 10:46 A.M.. Luna Aff. ¶ 4, ECF No 38-7.  She says she thought she saved and sent that clip to Claims Management Inc., who administers claims on behalf of Defendant, but that CMI informed her it never received that clip. *Id.*  No video showing Plaintiff exiting the women's clothing department was produced by Defendant.

Video 2 is an overhead shot of a register. Surv. Video Disk.  The entire video disclosed from that camera was from 10:45:45 A.M. to 10:48:15 A.M.. *Id.*  A man dressed in similar clothing and of a similar build to Plaintiff in Video 3 walks by the register at 10:46:36. *Id.*

Video 4 and Video 1 are shots of the store's entrances/exits.  Video 4 contains video from 9:45:02 A.M. through 11:50:41 A.M.. Pl. R. 56.1 Br. ¶ 52.  Defendant believes Plaintiff is observed between approximately 10:48:53 A.M. and 10:49:31 A.M.. Def. R. 56.1 Repl. Br. ¶ 52. That individual, wearing the same clothing as Plaintiff in Video 3, is observed conversing with a Walmart employee who appears to direct him towards something out of frame. Surv. Video Disk.  The individual identified then leaves the frame.  Video 1 contains video from a different camera from 9:39:57 A.M. until 11:48:09 A.M.. Pl. R. 56.1 Br.  ¶ 53.  Defendant believes Plaintiff can be observed at approximately 10:49:31 A.M. and leaves the shot at approximately 10:51:17. Def. R. 56.1 Repl. Br., ¶ 53.  During that timeframe, the individual Defendant identifies as Plaintiff (who is wearing the same clothing) can be observed appearing to flag someone down and speaking with someone just out of frame. Surv. Video Disk.

Defendant says it has turned over all relevant video it has in its possession and claims no camera in the store captured Plaintiff's fall or area where Plaintiff fell. Def. R. 56.1 Repl. Br. ¶ 60; Massaro Dec., Exh. J, ¶ 13, ECF No. 39-12.  The reason for this, as Ms. Luna explained in

her deposition, is that "there is no camera in ladies, above ladies…because of where the fitting room is located right in the middle…we can't have cameras too close to the fitting room where we can see, you know." Luna Dep., 24, 28.

Ms. Luna also provides a rationale for why there is substantially more video from the cameras at the entrance/exit of the store than from the action alley or register cameras: "As far as I can remember, Walmart changed its policy regarding saving videos sometime in late 2016 or early 2017. We were told to save two hours of the store's entrance/exits when the customer's accident was not captured on video surveillance…Walmart's policy did not require me to preserve two hours from each of [the other] cameras." Luna Aff. ¶ 6.

The video request form submitted by Ms. Luna asked if footage was available of "the incident." Ms. Luna checked "yes." Just below on the form, she was asked to describe what is seen on the video, and she wrote, "10:45:44 customer enters ladies [*sic*] apparel department, at 10:46:00 customer observed in ladies [*sic*] department exiting the area." Massaro Dec., Exh. C, ECF No. 39-5 ("Video Request Form"). The video request form also instructed her to "collect 2 copies (on DVD)" of "Surveillance Video (a minimum of one hour before and one hour after) depicting area where the incident occurred and any condition…involved. If the incident involved an identified substance, also collect video from the area where any product containing the substance was displayed or sold." *Id.* Ms. Luna initialed next to that instruction. *Id.*

Testimony was also offered on the Uniondale Walmart's inspection practice. Beatrice Nwatu, Assistant Manager at the Uniondale Walmart at the time of the incident, testified that it was the policy at that Walmart to do a "safety sweep" every hour where associates would stop what they were doing, walk around, and take care of any hazards found on the floor. Nwatu Dep., 28. Those sweeps would take place on the hour. *Id.* Ms. Luna testified that inspections

took place every two hours but did not know the exact schedule of those inspections. Luna Dep., 58.  Any safety sweeps that occurred were not documented. Nwatu Dep*., 23.*

## LEGAL STANDARD

Summary judgment is appropriate when the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  An issue of fact is material if the fact "might affect the outcome of the suit under the governing law…" *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986).  A genuine dispute exists as to a material fact when "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

On motions for summary judgment, the moving party bears the initial burden of establishing the absence of a material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  Once the moving party meets that burden, the non-moving party must then show there is a genuine dispute for trial. *Id.*  The burdens on both parties as to the underlying elements are aligned as they would be at trial. *Id.* at 254.  "Where, as here, the nonmovant bears the burden of proof at trial, 'the movant may show prima facie entitlement to summary judgment' by either (1) 'point[ing] to evidence that negates its opponent's claims' or (2) 'identify[ing] those portions of its opponent's evidence that demonstrate the absence of a genuine issue of material fact.'" *Barlow v. Male Geneva Police Officer,* 434 Fed. Appx. 22, 25 (2d Cir. 2011) (quoting in part *Salahuddin v. Goord,* 467 F.3d 263, 272 (2d Cir. 2006)).

When considering a motion for summary judgment, the Court must construe "all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)).

In a "slip and fall" case like this one, the federal summary judgment standard is different from the standard that would be applied were this in New York State court.  Under New York procedure, "[a] defendant who moves for summary judgment in a [sl]ip-and-fall case has the initial burden of making a *prima facie* showing that it neither created the alleged hazardous condition, nor had actual or constructive notice of its existence for a length of time sufficient to discover or remedy it." *Levine v. Amverserve Ass'n, Inc.,* 938 N.Y.S.2d 593, 593 (2d Dep't 2012).  However, under federal law, "the moving party need not make any affirmative *prima facie* showing on [a] motion for summary judgment and may discharge its burden of proof merely by pointing to an absence of evidence to support an essential element of [Plaintiff's] claim." *Ricci v. Walmart Stores East, LP,* No. 16-CV-6920, 2018 U.S. Dist. LEXIS 153996, 2018 WL 4308556, *11-12 (S.D.N.Y. Sept. 10, 2018) (quoting in part *Vasquez v. United States*, No. 14-CV-1510, 2016 U.S. Dist. LEXIS 7796, 2016 WL 315879, *5 (S.D.N.Y. Jan. 15, 2016)) (quoting in part *Zeak v. United States,* No. 11-CV-4253, 2014 U.S. Dist. LEXIS 148758, 2014 WL 5324319, *8 (S.D.N.Y. Oct. 20, 2014)) (internal quotations omitted).

When sitting in diversity on a state law claim, this Court applies state substantive law and federal procedural law. *Gasperini v. Center for Humanities, Inc.,* 518 U.S. 415, 427 (1996).  The burden of proof on a motion for summary judgment is procedural, and therefore federal law applies. *Ricci,* 2018 U.S. Dist. LEXIS 153996 at *12 (*see also Feis v. United States*, 394 F. App'x 797, 798-99 (2d Cir. 2010)).  Thus, Defendant may meet its burden here by showing "there is an absence of evidence to support the nonmoving party's case" and need not make out a *prima facie* case. *Celotex,* 477 U.S. at 325.

## DISCUSSION

Under New York State law, a slip and fall plaintiff is required to show a duty owed by the defendant to the plaintiff, a breach of that duty, and injury which proximately results from the breach. *Solomon v. City of New York,* 66 N.Y.2d 1026 (1985). A store like Walmart owes its customers a duty to maintain its premises in a "reasonably safe condition." *Hinds v. Walmart Stores,* 52 A.D.3d 1218 (4th Dep't 2008). Negligence is "conduct that falls beneath the standard of care which would be exercised by a reasonably prudent person in similar circumstances at the time of the conduct at issue." *Harper v. United States,* 949 F. Supp. 130, 132 (E.D.N.Y. 1996).

To prevail in a slip and fall case, the plaintiff must first show "the existence of a dangerous or defective condition." *Winder v. Exec. Cleaning Servs., LLC*, 936 N.Y.S.2d 687, 688 (2012). Then, the plaintiff must show that the defendant, "created the condition which caused the accident, had actual…notice of the condition, [or had] constructive notice of the condition." *Kraemer v. K-Mart Corp.*, 641 N.Y.S.2d 130, 131 (2d Dep't 1996). Here, Defendant does not argue Plaintiff has presented insufficient evidence to allow a reasonable jury to find the hanger on the floor was dangerous and instead argues only that there is an absence of evidence to support creation or notice by Defendant.

### I.      Creation of the Condition

Defendant argues there is no evidence in the record that Defendant caused the hanger to be on the floor and so there is no issue of material fact regarding Defendant creating the condition. To prove creation of the condition, Plaintiff would have to put into the record sufficient evidence of "some affirmative act" on the part of Defendant which would allow a reasonable jury to conclude Defendant caused the dangerous condition. *Feder v. Target Stores,* 15 F. Supp. 3d 253, 256 (E.D.N.Y. 2014).

8

Here, the record is devoid of any evidence as to how the clothes hanger came to be on the floor.  There is not even any circumstantial evidence to create a permissible inference that Defendant or its agents caused the hanger to be on the floor.  Plaintiff does not present any arguments in his brief as to this theory of liability.  Given Plaintiff's burden at trial, no reasonable jury could find Defendant created the dangerous condition here. *See Ricci,* 2018 U.S. Dist. LEXIS 153996 at *14-15 (collecting similar cases).

## II.    Actual Notice

To establish actual notice, a plaintiff must "prove that the defendant received a report of or was otherwise aware of the dangerous condition." *Thaqi v. Walmart Stores East, LP,* No. 09-CV-755, 2014 U.S. Dist. LEXIS 45107, *13 (E.D.N.Y. Mar. 31, 2014) (citing *Quarles v. Columbia Sussex Corp.*, 887 F. Supp. 327, 332 (E.D.N.Y. 1998)).  A defendant has actual notice of a dangerous condition if it "received reports of it such that it is actually aware of the existence of the particular condition that caused the fall." *Ricci,* 2018 U.S. Dist. LEXIS 153996 at *16-17 (quoting *Cousin v. White Castle Sys.,* 06-CV-6335, 2009 U.S. Dist. LEXIS 57079, 2009 WL 1955555, *7 (E.D.N.Y. July 6, 2009)).  Once that is established, the plaintiff then must show the defendant had a sufficient opportunity to remedy the condition but failed to. *Lewis v. Metropolitan Transp. Auth.*, 472 N.Y.S. 2d 368 (1st Dep't 1984).

Here, there is no evidence in the record any of Defendant's employees knew about the hanger on the ground which Plaintiff slipped on.  No employee submitted a witness statement saying they knew about the hanger on the ground prior to the fall (*see* Massaro Dec., Exh. E, ECF No. 39-7), nor did any employee of Defendant say so in a deposition (*see* Nwatu Dep.; Luna Dep.).  Instead, the only evidence in the record is that the first time Defendant became

aware of the condition was after Plaintiff's fall when he approached a cashier and told her about the incident. Collins Dep., 32-33.

Given that Plaintiff has put forward no evidence Defendant had actual notice of the hanger on the floor prior to Plaintiff's fall, no reasonable jury could find actual notice on the part of Defendant.

### III.     Constructive Notice

Finally, we reach constructive notice, which the parties spend the vast majority of their briefs on.  Two elements are required to show constructive notice: The plaintiff must show the dangerous condition was "visible and apparent" and that it "exist[ed] for a sufficient length of time prior to the accident to permit [the defendant] to discover and remedy it." *Nussbaum v. Metro-North Commuter R.R.,* 603 Fed. Appx. 10, 12 (2d Cir. 2015) (quoting *Lemonda v. Sutton,* 702 N.Y.S.2d 275, 276 (1st Dep't 2000)).

Defendant argues Plaintiff has not met his burden to show either element of constructive notice.  It argues the hanger could not have been visible and apparent because Plaintiff himself stepped on the hanger without noticing it. *See* Def. Br., 7, ECF No. 38-10.  And, Defendant argues, Plaintiff has failed to present any evidence that the hanger was on the floor long enough to permit the Walmart employees to remedy it, offering instead only speculation which is insufficient to defeat summary judgment where the burden is on Plaintiff at trial. *Id.* at 7-8.

Plaintiff argues he met his burden on constructive notice by showing Walmart failed to perform a reasonable inspection prior to Plaintiff's accident. Pl. Br., 13-23, ECF No. 39-1. Partially in furtherance of that contention, he argues a negative inference charge is warranted which is sufficient to defeat summary judgment because Walmart spoliated the only objective evidence which would have shown both the length of time the hanger was on the ground and

10

whether or not those inspections occurred. *Id.* at 3-13.  I will address each of these argument in turn.

### a.        Inspection Within a Reasonable Period of Time

Plaintiff argues that the question of constructive notice is either irrelevant or, at least, "academic" because Defendant did not perform reasonable inspections.  For this proposition he cites numerous federal and New York State cases, including one from the Second Circuit Court of Appeals, holding notice will be imputed upon a party under New York Law where "that party failed to conduct reasonable inspections of its property and a reasonable inspection would have revealed the defective condition." *Taylor v. Manheim Remarketing, Inc.,* 752 F. App'x 94, 95 (2d Cir. 2019).  Defendant argues that precedent is limited to snow and ice cases, and the only duty it was under was a "duty of keeping the[] premises in a reasonably safe condition for the benefit of [its] customers." *Aupperlee v. Restaurant Depot, LLC,* 177 A.D. 3d 940 (2d Dep't 2019) (other citations omitted).

The first question is whether imputing notice for failure to undertake reasonable inspections is limited to snow and ice cases, as this is not such a case.  I find the duty to undertake reasonable inspections applies in this case.

*Taylor* was originally a snow and ice case.  In the *Taylor* plaintiff's deposition, he repeatedly described slipping on ice.  However, the plaintiff's proffered expert concluded that the plaintiff did not slip on ice but instead slipped on a slippery substance composed of oil and water. *Taylor,* 752 Fed. Appx. at 96.  On appeal, in the case where the Second Circuit cited to the New York State reasonable inspection precedent, the plaintiff relied on the oil and water theory, not the snow and ice theory. *Id.*

11

Additionally, in its opinion, the Second Circuit cited two New York cases for the proposition that under New York law, a Court will impute notice where there was a failure to conduct a reasonable inspection: *Dufrain v. Hutchings* and *Quinn v. Holiday Health & Fitness Centers of New York, Inc.* 112 A.D.3d 1212 (3d Dep't 2013); 15 A.D.3d 857 (4th Dep't 2005).

In *Dufrain,* a furnace technician was injured when the wooden stairs he was walking on in the basement of the defendants' house collapsed.  In *Dufrain*, the New York Supreme Court noted that, "The failure to conduct [reasonable] inspections will result in the imputation of constructive notice to defendants as long as a reasonable inspection would have revealed the defective condition." *Dufrain v. Hutchings,* 112 A.D.3d 1212, 1213 (3d Dep't 2013).

In *Quinn,* the plaintiff slipped on a "murky" substance located on a landing and fell on a stairway at a health club operated by the defendant.  In that case, the New York Supreme Court granted summary judgment to the defendant on the grounds that, "Constructive notice will not be imputed where the defect is…of such a nature that it would not be discoverable even upon reasonable inspection. The failure to make a diligent inspection constitutes negligence only if such an inspection would have disclosed the defect." *Quinn v. Holiday Health & Fitness Ctrs. Of N.Y., Inc.,* 15 A.D. 3d 857, 858 (4th Dep't 2005) (internal quotations omitted).

In both cases, neither of which involved ice or snow, New York State courts affirmed that they will impute constructive notice where there is a failure to reasonably inspect the property. While Defendant is correct that its duty is only to keep the premises in a reasonably safe condition, New York courts have found that "the issue of whether defendants have conducted reasonable inspections of the premises" is part of "determining whether defendants fulfilled their duty to maintain the premises in a reasonably safe condition." *Dufrain,* 112 A.D.3d at 1212-13. Therefore, Defendant, despite this not being a snow and ice case, was under a duty to conduct

reasonable inspections and a violation of that duty would allow a court to impute constructive notice to it.

Here, there is no definitive evidence as to when the last inspection was done of the location where Plaintiff slipped and fell in the Uniondale Walmart on July 22, 2017.  Ms. Nwatu, in her deposition, testified that when she arrived for work, she "walk[ed] around, [and made] sure the department [was] clean, safe." Nwatu Dep., 23.  She says her working hours, at that time, began at 8 A.M. *Id.* at 21.  She testified that on the morning of July 22, 2017, there were no "issues or concerns." *Id.* at 22-23.

Ms. Nwatu also testified to the Defendant's general inspection practice.  She said that the Defendant had "strategic safety sweep[s] which we call for every hour and all associates stop whatever they're doing…we walk around, take care of anything on the floor, pick up anything off the floor." *Id.* at 28.  She was asked, "When you say every hour, are we talking on the hour, 7:00 a.m., 8:00 a.m., and so on and so forth?" to which she responded, "Yes." *Id.*

If this procedure was followed on July 22, 2017, the last inspection of the premises would have occurred at 10 A.M., with Plaintiff's accident occurring sometime around 10:45 A.M.  Summary judgment for the defendant has been found appropriate by this Court in cases with similar facts where an inspection of the area where the incident occurred within an hour of a plaintiff's accident.  *See e.g. Shimunov v. Home Depot U.S.A, Inc.*, 11-CV-5136, 2014 U.S. Dist. LEXIS 42450 *2-3 (E.D.N.Y. Mar. 28, 2014); *Stephanides v. BJ's Wholesale Club, Inc.,* 12-CV-0083, 2013 U.S. Dist. LEXIS 55969, 2013 WL 1694901, *6-9 (E.D.N.Y. Apr. 18, 2013).  Walmart did not keep documentation of the walk-arounds/safety sweeps Ms. Nwatu described.  Pl. R. 56.1 Br. ¶ 20; Def. Repl. 56.1. Br., ¶ 20.

Plaintiff argues that the 10 A.M. inspection did not occur.  To support this contention, he points to the lack of confirmation by Defendant or Defendant's employees that the 10 A.M. sweep occurred.  He argues, correctly, that none of the six employees who gave witness statements said they inspected or performed a safety sweep of the women's clothing department prior to Plaintiff's accident occurring. Pl. Br., 17-18.  He also points to the fact that Ms. Luna, in her deposition, testified that if video revealed an employee performing an inspection or safety sweep, that employee would be given paperwork to fill out a witness statement. *Id.* at 18.  Thus, Plaintiff argues, no inspection occurred at 10 A.M..  Additionally, Plaintiff points out Ms. Luna, at the time an Asset Protection Associate, contradicted Ms. Nwatu, at the time the Assistant Manager, and said the safety sweeps occurred every two hours as opposed to every hour. Luna Dep., 58.

While Plaintiff is correct that Ms. Luna testified to this, she also testified that there was no video of the area where Plaintiff's fall occurred. *Id.* at 61.  Therefore, Ms. Luna would not have reviewed a video of an employee performing a safety sweep of the location of Plaintiff's accident, regardless of whether it occurred or not.  Additionally, the six employees' statements all detail what happened after Plaintiff fell, none of them discuss what the employees were doing prior to the fall.

Moreover, Plaintiff cannot meet its trial burden under the federal summary judgment standard merely by pointing to the absence of proof proffered by Defendant that such an inspection did indeed occur.

In a similar case, *Thomason v. Target Corp.,* Target, the defendant, had no definitive evidence of when inspections were performed on the day of the incident, only testimony that it generally happened three times a day, including thirty minutes before the plaintiff's fall.  It kept

14

no records of its inspections.  The Southern District held in that case that because the plaintiff

had not presented any evidence that the defendant had failed to inspect or clean, and merely

pointed to the defendant's failure to produce affirmative evidence that it did inspect, the plaintiff

had not carried its burden to defeat summary judgment. *Thomason v. Target Corp.,* No. 20-CV-

8982, 2022 U.S. Dist. LEXIS 71084, 2022 WL 1137165, *13 (S.D.N.Y., Apr. 18, 2022).

    *Ricci v. Walmart Stores* is similar.  There, the Southern District held, "Because the

federal burden of proof applies, Defendant was not required to produce evidence of the last time

the area was inspected or cleaned but need only point to Plaintiffs' lack of evidence and inability

to raise a genuine issue of material fact on the elements of their claim." *Ricci,* 2018 U.S. Dist.

LEXIS 153996 at *32.  The Southern District in *Ricci* also collected cases from within the

Second Circuit holding the same. *See Vasquez v. United States,* No. 14-CV-1510, 2016 U.S.

Dist. LEXIS 7796, 2016 WL 315879, *8 (S.D.N.Y. Jan. 15, 2016); *Castellanos v. Target Dep't

Stores, Inc.,* No. 12-CV-2775, 2013 U.S. Dist. LEXIS 111969, 2013 WL 4017166, at *7

(S.D.N.Y. Aug. 7, 2013); *Lacey v. Target Corp.,* No. 13-CV-4098, 2015 U.S. Dist. LEXIS

62643, 2015 WL 2254968, *6 (E.D.N.Y. May 13, 2015).

    Plaintiff would bear the burden at trial to prove reasonable inspections did not occur prior

to Plaintiff's accident.  Even granting all permissible inferences in his favor as the non-moving

party, the mere fact that the six employees who filled out witness statements did not mention an

inspection was performed would not be enough for a reasonable jury to find Plaintiff had shown

no reasonable inspection occurred.  Nor does Ms. Luna's testimony that she would have had

anyone she saw perform an inspection fill out a witness statement help Plaintiff because she

testified she did not review video of the actual accident site.  And, not only does Plaintiff put

forward no affirmative evidence of his own to show a reasonable inspection of the area did not

occur, he also does not make arguments to the Court as to why, if the 10 A.M. inspection did not

occur, that would allow a reasonable jury to conclude Walmart's inspection of the area was

unreasonable.  Thus, constructive notice cannot be imputed so as to defeat summary judgment.

### b.      Spoilation and An Adverse Instruction on Constructive Notice

Plaintiff also argues spoilation of evidence by the Defendant deprived him of the ability

to make out his case for constructive notice and that an adverse inference on summary judgment

is warranted on that basis.

A party may seek sanctions for spoilation, including adverse inference instructions. *Mali*

*v. Fed. Ins. Co.,* 720 F.3d 387, 392-93 (2d Cir. 2013).  For a sanction to be imposed, the party

seeking sanctions must establish that the party with control over the evidence had an obligation

to preserve it when it was destroyed, the records were destroyed with a culpable state of mind,

and the evidence was relevant such that a reasonable trier of fact could find it would support the

party's claim or defense. *Residential Funding Corp. v. DeGeorge Fin. Corp.,* 306 F.3d 99, 107

(2d Cir. 2002) (quoting *Byrnie v. Town of Cromwell,* 249 F. 3d 93, 107-12 (2d Cir. 2001).  On

summary judgment, an adverse inference may be warranted based on spoilation of evidence.

Such an inference is warranted if the Plaintiff can establish: (1) the evidence at issue existed; (2)

the evidence was in the exclusive possession of the non-moving party; and (3) "the non-

production of the [evidence] has not been satisfactorily explained." *Thaqi*, 2014 U.S. Dist.

LEXIS 45107 at * 22 (quoting *Mali v. Fed. Ins. Co.,* 720 F.3d 387, 391-93 (2d Cir. 2013)).

It is Plaintiff's contention that he is entitled to an adverse inference sufficient to defeat

summary judgment because videos were not disclosed to him which would have potentially

revealed how long the hanger was on the floor, how the hanger came to be there, and either the

existence or non-existence of an inspection.

16

Plaintiff presents a few arguments for why he believes video footage of the women's clothing department was spoliated.  First, he points to what he calls Walmart's "track record" for spoliating evidence, quoting the District of Puerto Rico's determination in *Rivera v. Sam's Club Humacao*. Pl. Br., 1-2; 386 F. Supp. 3d 188, 208-209 (P.R.D.C. 2018).  The District of Puerto Rico cited 18 cases from throughout the country where it had been found that, at minimum, a reasonable jury could draw an adverse inference against Walmart for spoliation.  Those cases included *Thaqi* in this District.

In its reply, Defendant argues that "for every negative case cited by plaintiff, Walmart can point to a case where the Court recognized that Walmart cannot be charged with spoliation of video where, as here, video of an accident never existed in the first place," and goes on to cite several cases from around the country. Def. Repl. Br., 2, ECF No. 40.  The dispute as to what Walmart has done in other cases is irrelevant to the Court's determination here.  Our question for the purposes of this summary judgment motion is what Defendant has done in *this* case, not what it has done in others.

What is instructive, however, is looking at why this Court held the plaintiff was entitled to an adverse inference on summary judgment in *Thaqi*, to determine how factually similar the situation was there to the one here.  In *Thaqi,* the plaintiff slipped on a spill at a Walmart store. The Walmart co-manager testified that, though she was supposed to contact the store's loss prevention personnel about the accident, she could not recall doing so.  In *Thaqi,* Walmart produced no surveillance video and, even though standard operating procedure was to photograph the accident site, produced no photographs.  The notes taken by loss prevention personnel during the investigation said the co-manager indicated there were no pictures and that the VCR tape was changed out that day, so there was no video from the entire day.  However, the

17

summary of a conversation between loss prevention personnel and a different employee said, "Yes to video, Yes to pics. taken[.]" *Thaqi,* 2014 U.S. Dist. LEXIS 45107 at *7-8.

In analyzing an adverse inference for spoliation, this Court found the note in the summary which read "Yes to video, Yes to pics. taken[.]" was evidence that was "far from overwhelming." *Id.* at *23.  However, this Court sill found an adverse inference was warranted because the co-manager's statement to loss prevention personnel (that the reason no footage existed was because the VCR tape had not been changed out) did not make sense, as Walmart's own attorney admitted the system at the time did not require changing out VCR tapes. *Id.* at *24. Thus, the Court found that Walmart's failure to produce the video had not been satisfactorily explained, and an adverse inference was warranted on all the video and picture evidence, as none had been turned over. *Id.*

Importantly for this case, the Court in *Thaqi* also analyzed Walmart's arguments in defense.  One of the arguments Walmart made was that its Asset Protection Coordinator testified that, although there were video cameras in the general area of the accident at the time of the accident, the cameras did not cover the specific location where the accident occurred.  This Court found, "If this were the only evidence in the record concerning the coverage of the video cameras, Walmart might be entitled to summary judgment.  However, there is contrary evidence concerning the coverage of cameras."  That contrary evidence included the testimony of the co-manager, who testified that a video camera did in fact face the scene of the accident. *Id.* at *25.

Here, Walmart and Ms. Luna have sworn no camera covered the location of the accident, and nothing in the record contradicts that assertion.  Plaintiff's only evidence in attempting to contradict that is one line on Ms. Luna's video request form in which, next to "Footage Available of the Incident" she checked off "Yes" instead of "No."  However, just below this, on the same

form, it says, "If yes, describe what is seen on the video including timeline of when pertinent events occur in the video footage."  Ms. Luna clarified there, "10:45:44 customer enters Ladies Apparel Department, at 10:46:00 Customer observed in Ladies Department exiting the area." Video Request Form, 1.  She does not indicate there was any footage of the actual accident location.

In her deposition, Ms. Luna was asked about checking "yes" on the form.  She responded, "There was video of the customer in the area where the accident occurred, so, therefore, I checked [] yes. There is no video of the customer falling of the exact point, all I have is around the area, that's the reason why I explained what I observed. So, when CMI got the video, they would know what to look for." Luna Dep., 42.  Based on the description on the form and this response, there is nothing to indicate there is some heretofore unknown additional video footage of the location of Plaintiff's accident, instead it merely seems Ms. Luna understood that she should check "yes" if there was any video relevant to the incident.  Therefore, unlike in *Thaqi,* there remains no evidence to contradict Walmart's claim that no camera captured the accident location.

Thus, even granting all permissible inferences to Plaintiff, the mere checking off of "Yes" cannot be construed as evidence there was footage of the accident site, particularly when combined with the detailed explanation of what video Ms. Luna actually reviewed just below it, in which she does not note any video of the accident or accident site itself.  Therefore, the failure to turn over video of the accident area was satisfactorily explained on the basis that no camera captured it, and no adverse inference is warranted regarding footage of the location of Plaintiff's accident.

Plaintiff also argues additional evidence was spoliated, which he claims hindered him from making out constructive notice on a reasonable inspection theory: the video of Plaintiff exiting the women's department, additional video from the camera showing Plaintiff entering the women's clothing department, and the clothes hanger itself.  In support of his spoliation claims, Plaintiff points to: Ms. Luna's admission that she did find video of the Plaintiff exiting the women's clothing department which was not disclosed to Plaintiff (and which CMI never received); Walmart's disclosure of only 6 minutes of the "action alley" camera, despite the Video Request Form indicating that at minimum one hour before and after was to be preserved; and Walmart's failure to preserve and disclose the hanger which Plaintiff allegedly slipped on. I will address each of these pieces in turn. Pl. Br., 7-11.

### i.    Footage of Plaintiff Exiting the Department

First, Plaintiff points to Miss Luna's testimony that she did review video that showed Plaintiff exiting the women's clothing department as evidence of spoliation.  In her deposition, Ms. Luna testified that one surveillance camera she reviewed was timecoded 10:46 A.M. and was "the camera that was by the registers that I was able to get him with a white T-shirt coming out of the area in ladies and heading to self-checkout." Luna Dep., 33.  That camera angle was not turned over to Plaintiff.  Ms. Luna testified that that camera, "…showed the customer coming out of, walking normally out of the area and he's wearing a white T-shirt…All you can see is basically [] you can't see the floor, you can clearly see customers walking in the area of ladies…" Luna Dep., 35.  This is additionally supported by the Video Request Form, upon which Ms. Luna wrote, "At 10:46:00 customer observed in Ladies Department exiting the area." However, Ms. Luna clarified she reviewed "video of the customer in the area where the accident

20

occurred…There is no video of the customer falling of the exact point, all I have is around the area…" Luna Dep., 41-42.

In her sworn affidavit, Ms. Luna gave more information about the missing camera angle. She testified, "I saw the customer on a different camera at 10:46:00 a.m. exiting the area containing the Ladies' Department.  I thought I saved that video clip and sent it to CMI with the others, but I am told that CMI did not receive that video clip.  That clip did not show the customer slip and fall.  That clip did not show the floor of the Ladies' Department.  As I wrote on my Witness Statement, that clip just showed the customer leaving the area of the Ladies' Department at 10:46 a.m. I remember making sure to write down that the customer was not observed by me on video surveillance at all for the 16 seconds between 10:45:44 a.m. and 10:46:00 a.m." Luna Aff. ¶ 4.  On her contemporaneous witness statement, Ms. Luna indeed wrote, "There was 16 seconds that the customer was not on CCTV surveillance. Then he is observed exiting area approaching Associate…" Massaro Dec., Exh. E.

Based on this testimony it is clear that the footage of the Plaintiff leaving the women's area existed.  It is equally clear that that footage was in the exclusive possession of Defendant. It is also clear Defendant was negligent in not preserving the footage.  However, the missing footage does not appear to be material to Plaintiff's claims.

Plaintiff seeks an adverse inference on either or both of the time the hazard existed and the failure to conduct reasonable inspections.  But Plaintiff has elicited no evidence that this camera angle would have captured either of those things.  The only evidence in the record is that this camera angle did not capture the floor of the women's clothing department or the accident site.  If the video did not show the accident site, as Ms. Luna testified under oath, as she wrote in her witness statement at the time, and as Defendant maintains in its briefs, then it could not have

shown either how long the hanger was on the floor nor an employee inspecting or not inspecting the accident site.  The most it could have shown was employees entering/exiting or not entering/exiting the women's clothing department via the route shown on that camera.  If it showed no employees entering/exiting, Plaintiff presumably would have used it as evidence of non-inspection.  But without evidence by Plaintiff that this camera and the "action alley" camera showed the exclusive means of egress and entry to the women's clothing department, the absence of an employee on this camera angle would not have established the absence of an inspection of the area of Plaintiff's accident sufficient for a reasonable jury to find reasonable inspections were not performed.

*Thaqi* is once again instructive.  In *Thaqi*, another argument Walmart provided in opposing an adverse inference for spoliation was that the video spoliated would not have been relevant to the plaintiff's suit against it.  Walmart cited *Simoes v. Target Corp.*, where this Court held that Defendant Target was negligent in not preserving video of the accident area prior to the fall but still declined to apply an adverse inference because the video would not have been relevant, as the liquid that caused Plaintiff's fall was not viewable.  This Court noted that, even assuming the video would have established how and when the spill occurred, the additional footage "could have been favorable to either party's case." *Simoes v. Target Corp.,* No. 11-CV-2032, 2013 U.S. Dist. LEXIS 83896, 2013 WL 2948083, *7 (E.D.N.Y. Jun. 14, 2013).

This Court in *Thaqi* distinguished that case from *Simoes,* finding that in *Simoes,* the destruction of the video was merely negligent, meaning the Plaintiff faced a higher hurdle in establishing the relevance of the claim.  It held, in contrast, where a video was destroyed in bad faith or through gross negligence, that will frequently permit an assumption that the missing evidence is favorable to the plaintiff and support an adverse inference at the summary judgment

stage. *Id.* at *28-29.  Here, Ms. Luna documented that she found the video of Plaintiff exiting the women's clothing department at the time of her review, she noted what the video showed in her contemporary witness statement, she swore under oath the video did not show Plaintiff's fall or the floor of the women's clothing department, and she testified that she believed she had sent the video to Walmart's loss prevention contractor.  Plaintiff has submitted no evidence of gross negligence or bad faith beyond its "track record" evidence which does not establish any culpability in *this* case.

Based on the only evidence in the record, it seems that the spoliation of the video of Plaintiff leaving the women's clothing department was negligence, not gross negligence or bad faith.  Like in *Simoes,* Plaintiff has not established that the missing video would be material to his claim, as it would not have shown the accident site or hanger and, even if it did not show any associate entering or exiting the department, that would not be sufficient for a reasonable jury to conclude no reasonable inspection of the area where Plaintiff fell occurred.  Thus, any adverse inference on spoliation of this video would not defeat summary judgment.

## ii.    Additional Footage of Plaintiff Entering Department

Next, Plaintiff points to Walmart's disclosure of only 6 minutes of the camera showing Plaintiff turning to go into the women's clothing department as evidence of spoliation warranting an adverse inference.  It is true that Walmart was negligent in not preserving, at minimum, a full hour before and after of the videos from the cameras showing Plaintiff's entrance and exit of the women's clothing department.  Walmart's own document preservation directive indicates it must preserve "Surveillance video (a minimum of one hour before and one hour after) depicting area." Video Request Form, 2.

Plaintiff argues that only receiving six minutes of video showing Plaintiff entering the women's clothing department deprived him of "the only objective evidence of a safety sweep/inspection occurring at 9:00 a.m. or 10 a.m. by the Lady's Department…such video would have shown the employees walking through the Lady's Department and inspecting, or not shown them inspecting." Pl. Br., 12.  But, that is not accurate.

If Plaintiff had a minimum of two hours of video of both camera angles, those videos may or may not have shown Walmart staff turning into or out of the women's clothing department.  But, again, such video would not establish whether reasonable inspections of the site where Plaintiff slipped on the hanger occurred.  Even granting Plaintiff the inference he seeks and assuming these cameras would have shown no employees entering or exiting the women's clothing department for at least an hour before Plaintiff's accident, without Plaintiff entering evidence in the record that these were the exclusive means of entering or exiting the department, the videos would not be enough for a reasonable jury to conclude no one inspected the area in that hour.  An associate merely could have entered and/or exited via a different route than Plaintiff.

So, while it is true that Walmart should have preserved and turned over to Plaintiff a minimum of an hour before and after Plaintiff's accident from these two cameras, even an adverse inference that no employee would be shown entering or exiting the women's clothing department on those two cameras within an hour of Plaintiff's accident would not be enough for a reasonable jury to conclude no reasonable inspection was performed. Thus, any such inference would not defeat summary judgment here.

### iii.     The Hanger Itself

Finally, Plaintiff argues an adverse inference sufficient to defeat summary judgment is appropriate because Walmart did not preserve the hanger.  While it is, once again, true that Walmart should have preserved the hanger, it is unclear how the preservation of the hanger would have helped Plaintiff.  As discussed below, I already assume for the purposes of this summary judgment motion, that Plaintiff's description of the hanger as "incredibly slippery," "4 to 6 feet wide," and a "cloudy, white" color is accurate. Pl. R. 56.1 Br. ¶¶ 8, 10-11.  Therefore, any spoliation of it is irrelevant.

### c.     Plaintiff Has Not Presented Evidence Upon Which a Reasonable Jury Could Conclude Defendant Had Constructive Notice of the Hanger

With Plaintiff unable to establish constructive notice through lack of reasonable inspection or an adverse inference based upon spoliation, I turn now to whether Plaintiff has presented evidence sufficient for a reasonable jury to find constructive notice.  To do so, a reasonable jury must be able to find based upon the evidence presented by Plaintiff that: (1) the dangerous condition was "visible and apparent" and (2) that it "exist[ed] for a sufficient length of time prior to the accident to permit [the Defendant] to discover and remedy it." *Nussbaum,* 603 Fed. Appx. at 12.

Plaintiff has presented sufficient evidence for a reasonable jury to find the hanger was "visible and apparent."  Plaintiff has put into the record a photo taken after the incident, depicting a similar hanger on the ground. Collins Aff. ¶ 8.  Plaintiff claims the hanger, which is white, was readily visible when contrasted with the brown floor of the women's clothing department. Pl. R. 56.1 Br. ¶ 7.  The photo attached to Plaintiff's affidavit does show the hanger on a brown wood floor, and the combination of colors does make it visible and apparent.  While Defendant argues the hanger could not have been visible and apparent because Plaintiff did not

see it, Plaintiff may not have seen it because he was looking around for his friend, not because of anything to do with the visibility of the hanger itself.  Accepting such an argument would result in constructive notice almost never being present in a slip and fall, as plaintiffs generally do not intentionally step upon hazards they see on the ground.  Granting Plaintiff's description, a reasonable employee inspecting the floor would have seen this hanger.  Therefore, a reasonable jury could find for Plaintiff on this element.

However, Plaintiff has put no evidence into the record as to how long the hanger was there, let alone that it existed for a sufficient length of time to permit Defendant to discover and remedy it.  There is no evidence in the record as to how the hanger got on the floor.  There is no evidence that any employee of Defendant knew the hanger was there prior to Plaintiff falling.  There is no camera which captured the area where the hanger was.  Plaintiff did not see the hanger until he stepped on it.  There is no testimony of another customer from that store who could testify to seeing the hanger on the ground.

Because Plaintiff will have the burden at trial to show the hanger existed for a sufficient length of time for Defendant to remedy it, Defendant can successfully point to the absence of any evidence to support this essential element of Plaintiff's claim on summary judgment.  Thus, Plaintiff cannot survive summary judgment on constructive notice.

**CONCLUSION**

Even assuming the facts as Plaintiff has alleged, and granting all permissible factual inferences in Plaintiff's favor, he has not submitted evidence to support essential elements on creation, actual notice, or constructive notice.  As a result, Defendant's motion for summary judgment is GRANTED. The Clerk of the Court is respectfully directed to enter judgment accordingly and close the case.


**SO ORDERED.**


_____
              /s/
Steven L. Tiscione
United States Magistrate Judge
Eastern District of New York


Dated: Central Islip, New York
          June 27, 2022